Per Curiam:
This case was referred pursuant to Rule 57(a) to Trial Commissioner Richard Arens, with directions to make findings of fact and recommendation for a conclusion of law. The commissioner has done so in an opinion and report filed on February 17, 1965. No exceptions or briefs have been filed by the parties and the time for plaintiff to so file expired April 5, 1965. On April 23, 1965, the defendant filed a motion for adoption of the commissioner’s opinion and findings of fact to which plaintiff has filed no response. Since the court agrees with the commissioner’s findings, his opinion, and his recomended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, not entitled to recover, defendant’s motion for adoption of the commissioner’s opinion and findings of fact is allowed, and the petition is dismissed.
Opinion op Commissioner
Plaintiff, a veterans’ preference eligible, sues for back salary and other emoluments lost as a result of his removal, effective April 12, 1961, from his position as guard at the Lexington Signal Depot, an agency of the Department of the Army, Lexington, Kentucky. He alleges that the action of removal was arbitrary, capricious, and unlawful. The *610 amount of recovery, if any, is reserved for further proceedings.
On May 27,1960, plaintiff and a fellow guard at. the Depot, Sterling Riddle, were arrested on a warrant, issued after complaint was made by a special agent of the Federal Bureau of Investigation before a U.S. Commissioner, charging them, together with Robert Paulette, operator of' a Lexington surplus-parts business, with having stolen certain walkie-talkie radio equipment which was the property of the U.S. Government.
On June 1, 1960, a preliminary hearing was held before a U.S. Commissioner in the case of plaintiff and his fellow guard, Sterling Riddle. At the preliminary hearing, a special agent of the FBI testified that he had information that in May 1960 certain walkie-talkie radio equipment was shipped by Robert Paulette to Los Angeles, California, where an inspection of the shipment revealed certain serial numbers. A criminal investigator of the Depot testified that the inspector’s stamps and serial numbers on some of the aforementioned equipment established that it was the property of the Depot and that, as far as he was able to determine, none of the equipment had been sold. He further testified that Robert Paulette was a frequent purchaser of surplus property at the Depot. Mrs. Robert Paulette, the estranged wife of Robert Paulette, testified that, at about 11 p.m. on an evening in November or December 1959, Sterling Riddle delivered to her husband, by placing under a fence at the Depot, some walkie-talkie radios but that she did not know if her husband had purchased them; that in February 1960, Sterling Riddle and Monroe Prater (plaintiff herein) delivered “some Government property” (about 50 walkie-talkie radios) to her husband with whom she was then living in their home in Lexington but that she did not know if her husband had purchased them or where they came from; and that on May 16, 1960, her husband shipped some walkie-talkies to California but that she could not identify them as the walkie-talkies which had been delivered to her husband by Mr. Riddle or Mr. Prater. No other witnesses testified at the preliminary hearing, at the conclusion of which the Commissioner overruled a motion to quash the complaint and ordered the defend *611 ants held for trial at the U.S. District Court at Lexington, Kentucky,
On June 7, 1960, Mrs. Paulette called the Federal Bureau of Investigation in Lexington and stated that she expected to appear the next day with her husband at the FBI offices, but that what she expected to say “was to be taken with a grain of salt” because she was in fear of her life. The next day she and her husband appeared at the FBI offices where she stated that she had made up the story concerning the involvement of her husband, Mr. Prater, and Mr. Biddle in the theft because she believed that if she got her husband into trouble it would make it easier for her to prevail in her divorce action which was then pending against Mr. Paulette.
On January 10, 1961, the grand jury of the U.S. District Court for the Eastern District of Kentucky returned an indictment charging Bobert Paulette, Sterling Biddle, and plaintiff with having stolen and converted certain radio receiver-transmitter units.
By letter dated April 5, 1961, plaintiff was notified by the personnel officer of the Depot that it was proposed to remove him from his position as guard and that he was not being given a 30-days’ advance notice because he had been indicted and charged with an offense for which a sentence of imprisonment can be imposed. The specific reason for the proposed action was stated to be that plaintiff, Bobert Paulette, and Sterling Biddle were charged with having stolen and converted certain radio receiver-transmitter units which were the property of the United States. Plaintiff was advised that he had the right to reply to the notice of proposed removal personally and/or in writing, and to submit affidavits and witnesses in support of his reply. The letter further stated that, because of the nature of the charge, the commanding officer felt that it would be detrimental to the best interest of the Government to retain plaintiff in a duty status during the notice period, but that he would be carried in a pay status from April 5, 1961, through the close of business on April 12, 1961.[1]
*612 On April 6, 1961, plaintiff’s attorney wrote to the commanding officer of the Depot and, on behalf of both plaintiff and Sterling Riddle, entered a specific denial of any implication in the charges of having stolen and converted radio receiver-transmitter units.
By letter dated April 11,1961, plaintiff was notified by the personnel officer of the Depot that the charges specified in the April 5, 1961, letter to him had been sustained and warranted his removal and that he would accordingly be removed effective April 12, 1961. Plaintiff’s attorney promptly appealed to the Sixth U.S. Civil Service Region, Cincinnati, Ohio.
Thereafter, the personnel officer of the Depot sent to the Sixth Region a lengthy letter (set forth in pertinent parts in finding 7(b)) in which he stated that an investigation which was then being conducted under the auspices of the Federal Bureau of Investigation strongly supported the inference of plaintiff’s complicity in the theft.
Beginning on June 6, 1961, plaintiff and Sterling Riddle were tried before a jury in the U.S. District Court at Lexington, Kentucky, and the trial resulted in a hung jury.
Beginning on March 12, 1962, plaintiff, Sterling Riddle, and Robert Paulette were tried before a jury in the same district court. At the conclusion of the Government’s case, upon motion of the Assistant U.S. Attorney, the court dismissed the charges against plaintiff on the ground of insufficiency of evidence. Thereafter, the court sustained a motion for judgments of acquittal on behalf of Sterling Riddle and Robert Paulette on the ground of lack of evidence of theft. Mrs. Robert Paulette, who had testified at the preliminary hearing, was not subpoenaed as a witness and did not testify.
Following the dismissal of the criminal charges against him, plaintiff waived a hearing on his appeal which was then *613 pending before the Seventh U.S. Civil Service Region, Chicago, Illinois (which in the intervening time became the appropriate region) and submitted to the Region his affidavit denying that he had anything to do with the alleged theft. His attorney contended that the judgment of acquittal was res adjudicata of the administrative charge and, in addition, made objection to consideration by the Region of certain material which the Region had before it relative to the case.
Among the documents which were before the Chicago Region were the transcript of the preliminary hearing, the transcript of the testimony of the special agent of the FBI in the trial which resulted in a hung jury, and a report, accompanied by 16 exhibits, of an investigation of plaintiff made by the Region Investigations Division.
On June 25, 1962, the Chicago Region issued its decision on plaintiff’s appeal. It found that all the procedural requirements of the Veterans’ Preference Act and the regulations promulgated thereunder had been met; that the charge had been sustained by the evidence; and that plaintiff’s removal was effected for the purpose of promoting the efficiency of the service.
Following timely appeal, the Board of Appeals and Review of the U.S. Civil Service Commission, which had before it not only the documents which had been before the Chicago Region but also a brief submitted by plaintiff’s attorney and a reply brief submitted by the commanding officer of the Depot, affirmed the decision of the Region.
Plaintiff does not contend in this court that it necessarily follows that his removal by the administrative authorities was arbitrary and capricious because the removal was based on the same charge which was dismissed in the criminal proceeding on the ground of insufficiency of evidence. The law is settled that this does not necessarily follow. Cook v. United States, 164 Ct. Cl. 438 (1964); Finn v. United States, 152 Ct. Cl. 1 (1961).
Plaintiff’s main contention is that the only evidence relied upon by the Chicago Region in sustaining his discharge was Mrs. Paulette’s testimony, given at the preliminary hearing, which plaintiff asserts she later repudiated and which even if taken as true did not sustain the charge against him.
*614 In support of bis position, plaintiff points first to tbe testimony of Mrs. Paulette at the preliminary hearing (finding 3(c)), in which she testified that in February 1960, Sterling Riddle and Monroe Prater (plaintiff herein) delivered “some Government property.” (about SO walkie-talkie radios) to her husband, with whom she was then living, but that she did not know if her husband had purchased them or where they came from, and that she could not identify such walkie-talkies as the ones which had been shipped to California. Plaintiff next points to the following excerpts from the opinion of the Chicago Region:
The basis for this charge is information provided by Mrs. Shirley Paulette, the wife of Robert Paulette to the FBI which, in turn, was referred to officials of the Lexington Signal Depot, and which was the subject of testimony by Mrs. Paulette at a preliminary hearing before a United States Commissioner on June 1, 1960 * * *.
i.k # >1: # is
* * * In this instance, it is found that the testimony of Mrs. Paulette at the preliminary hearing is admissible as evidence in this case. Further, it is found that this testimony can be relied upon in deciding this appeal. * * *
Plaintiff’s focus on the excerpts of the opinion of the Chicago Region is too restricted and does not take into account the entire administrative proceedings pursuant to which he was removed. The Region had before it, among other documents, the transcript of the entire preliminary hearing, including the testimony of the special agent of the FBI and the criminal investigator of the Depot, and it was on the basis of this testimony that the U.S. Commissioner found “probable cause to believe that an offense has been committed, and that the defendant has committed it.”[2] The language hi the Region opinion that Mrs. Paulette’s testimony “can be relied upon in deciding this appeal” was, in the light of preceding language in the opinion, obviously intended to convey only the thought that her testimony was not to be regarded as *615 repudiated. Tbe entire facts surrounding Mrs. Paulette’s testimony clearly warrant this conclusion. Moreover, the opinion of the Board of Appeals and Review, the final administrative agency in the case, recites that the Board “had given careful consideration to all the evidence developed during the processing of the appeal to the Regional Office.”
Plaintiff’s other contention in this court is that the “entire Civil Service record constitutes hearsay, and that no affidavits, records or similar documents should be given any weight” because of the inability of plaintiff’s counsel to cross-examine the persons who authored the statements. This court has, however, repeatedly ruled that “proceedings before the Civil Service Commission and its regional agencies need not be cast in the mold of court proceedings” and that documents such as those in the record in this case may properly be considered by the Commission and its agencies. Horn v. United States, 147 Ct. Cl. 234, 177 F. Supp. 438 (1959); Atkinson v. United States, 144 Ct. Cl. 585 (1959).
It is not the province of this court to determine whether or not plaintiff committed the offense for which he was charged both criminally and in the removal action. The case is before the court based upon allegations that the removal action was arbitrary and capricious. These allegations must be clearly established to be sustained. Croghan v. United States, 116 Ct. Cl. 577, 89 F. Supp. 1002, cert. denied, 340 U.S. 854 (1950). No such showing has been made. On the contrary, there was sufficient evidence of probable cause of plaintiff’s guilt that the commissioner at the preliminary hearing held plaintiff for trial; there was sufficient evidence before the grand jury that it indicted plaintiff; there was sufficient evidence in the first criminal trial that the trial judge submitted the case to the jury; and there were investigative reports which “strongly supported the inference of plaintiff’s complicity in the theft.” There is no showing that any of the actions by the administrative officials were prompted by malice or were in bad faith. Gadsden v. United States, 111 Ct. Cl. 487, 78 F. Supp. 126 (1948), cert. denied, 342 U.S. 856 (1951). In the absence of clear evidence to the contrary, it is presumed that public officers have properly discharged their official duties. Har *616 rington v. United States, 161 Ct. Cl. 432 (1963). Plaintiff’s petition must therefore be dismissed.
Findings of Fact
1. (a) Plaintiff, a veterans’ preference eligible, resides in Lexington, Kentucky, where for approximately 12 years he was employed by the Department of the Army in the Provost Marshal Division of the Lexington Signal Depot (hereinafter generally referred to as the Depot).
(b) Effective April 12, 1961, he was removed from his position as a guard at the Depot.
(c) He alleges that the action of removal was arbitrary, capricious, unlawful, and without any basis in law or fact; that it violated his civil lights and his rights under the Veterans’ Preference Act; and deprived him of his property rights and his right to work, without due process of law, in violation of the Fifth Amendment to the Constitution.
(d) Pie seeks judgment against defendant for back salary and other emoluments of his position as a guard. The amount of the recovery, if any, is reserved for further proceedings.
2. On May 27, 1960, plaintiff and a fellow guard at the Depot, Sterling Piddle, were arrested on a warrant, issued after complaint was made by a special agent of the Federal Bureau of Investigation before a U.S. Commissioner, charging them, together with Eobert Paulette, operator of a surplus-parts business, with having stolen certain walkie-talkie radio equipment which was the property of the U.S. Government.
3. On June 1,1960, a preliminary hearing was held in the case of United States v. Sterling Riddle and Monroe Prater (plaintiff herein) before a U.S. Commissioner in Lexington, Kentucky, during which the following transpired:
(a) A special agent of the Federal Bureau of Investigation testified that he had information that in May 1960 certain walkie-talkie radio equipment was shipped by Eobert Paulette, operator of a surplus-parts business in Lexington, Kentucky, to Los Angeles, California, where it was delivered, and that an inspection of the shipment revealed certain serial numbers.
*617 (b) A criminal investigator of the Lexington Signal Depot testified to the effect that the inspector’s stamps and serial numbers on some of the equipment in the shipment established that the equipment was the property of the Lexington Signal Depot, and that, as far as he was able to determine in his investigation, none of the equipment had been sold. He further testified that Mr. Bobert Paulette was a frequent purchaser of surplus property at the Depot and, on occasions, bought large quantities of such property.
(c) Mrs. Bobert Paulette, the estranged wife of Bobert Paulette, testified, in essence, that, at about 11p.m. on an evening in November or December’1959, Sterling Biddle, a guard at the Depot, delivered to her husband, by placing under a fence at the Depot, some walkie-talkie radios but that she did not know if her husband had purchased them; that in February 1960, Sterling Biddle and Monroe Prater (plaintiff herein) delivered “some Government property” (about 50 walkie-talkie radios) to her husband with whom she was then living at their' home in Lexington, Kentucky, but that she did not know if her husband had purchased them or where they came from; and that on May 16,1960, her husband shipped some walkie-talkies to California but that she could not identify them as the walkie-talkies which had been delivered to her husband by Mr. Biddle or Mr. Prater.
(d) At the conclusion of the preliminary hearing, the commissioner overruled a motion to quash the complaint and ordered the defendants held for trial at the U.S. District Court at Lexington, Kentucky.
4. (a) On June 7, 1960, Mrs. Paulette called the Federal Bureau of Investigation in Lexington and stated in effect that she expected to appear the next day with her husband at the FBI offices but that what she expected to say “was to be taken with a grain of salt” because she was in fear of her life.
(b) On June 8, 1960, Mrs. Paulette and her husband appeared at the FBI offices in Lexington where she stated in effect that she had made up the story concerning the involvement of her husband, Mr. Prater, and Mr. Biddle in the theft because she believed that if she got her husband into *618 trouble it would make it easier for her to prevail in her divorce action which was then pending against Mr. Paillette.
5. On January 10,196Í, the grand jury of the TJ.S. District Court for the Eastern District of Kentucky returned an indictment in two counts. Count one charged that on or about December 1,1959, Robert Paulette and Sterling Riddle stole and converted certain radio receiver-transmitter units. Count two charged that on or about February 1,1960, Robert Paulette, Sterling Riddle, and plaintiff stole and converted certain radio receiver-transmitter units.
6. (a) By letter dated April 5,1961, plaintiff was notified by the personnel officer of the Depot that it was proposed to remove him from his position as guard and that plaintiff was not being given a 80-days’ advance notice because he had been indicted and charged with an offense for which a sentence of imprisonment can be imposed. The specific reason for the proposed action was stated to be that plaintiff, Robert Paulette, and Sterling Riddle were charged with having stolen and converted certain radio receiver-transmitter units which were the property of the United States. Plaintiff was advised that he had the right to reply to the notice of proposed removal personally and/or in writing, and to submit affidavits and witnesses in support of his reply. The letter further stated that, because of the nature of the charge, the commanding officer felt that it would be detrimental to: the best interest of the Government to retain plaintiff in a duty status during the notice period, but that plaintiff would be carried in a pay status from April 5, 1961, through the close of business on April 12, 1961. •
(b) On April 6, 1961, plaintiff’s attorney wrote to the commanding officer of the Depot to the attention of the personnel officer and, on behalf of both plaintiff and Sterling Riddle, entered a specific denial of any implication in the charges of having stolen and converted radio receiver-transmitter units. The letter requested that, when a filial decision had been reached relative to their removal, a copy be sent to the attorney.
(c) By letter dated April 11,1961, plaintiff was notified by the personnel officer of the Depot that the letter of April 6, 1961, of his attorney, had been received and given considera *619 tion by competent authority; that it had been decided that the charges specified in the April 5, 1961, letter to plaintiff had been sustained and warranted plaintiff’s removal, and that, accordingly, he would be removed effective April 12, 1961. The letter also advised plaintiff, as a veteran, of his right under Section 14 of the Veterans’ Preference Act to appeal the action and the procedure for the appeal.
(d) By letter dated April 12,1961, addressed to the Sixth U.S. Civil Service Region, Cincinnati, Ohio, plaintiff’s attorney appealed the proposed removal action of plaintiff and of Sterling Riddle.
7. (a) By letter dated April 13, 1961, the appeals examiner of the Sixth U.S. Civil Service Region, Cincinnati, Ohio, requested the commanding officer of the Depot for additional information regarding plaintiff’s removal, including factual statements of witnesses relied upon by the Depot in arriving at the decision to take the adverse action.
(b) In a responding letter, dated April 19, 1961, the personnel officer of the Depot stated that an investigation which was then being conducted under the auspices of the Federal Bureau of Investigation strongly supported the inference of plaintiff’s and Mr. Riddle’s complicity in the theft and distribution and sale, through Robert Paulette, of personal property of the United States. The letter continued in pertinent parts as follows:
‡ ‡ ‡ ‡
b. Information indicates that Riddle and Prater would select the types of property desired by Mr. Paulette and would secrete it in locations adjacent to the perimeter fence of the reservation; in and among, or near by, materials being held for Mr. Paulette’s removal from the depot, which materials had been acquired by him on sales of surplus property; or in the privately owned automobiles of the guards for removal from the depot. Upon delivery of the stolen property, Mr. Paulette would arrange its sales and distribution. The principal distribution outlet, at least so far as is presently ascertained, was through Alva Radio Industries, 4900 Linkershim Boulevard, North Hollywood, California, trading name of firm of which Mr. Harry (NMN) Gartzman (same address)' is President and through which he conducts operations, including export operations under State Department permits. Alva Radio In- *620 diistries is also sometimes designated as being located at 5323 Satsuma Avenue, North Hollywood, California; at P.O. Box 151, North Hollywood,- California; and as -.being located in Chicago, (no street address), Illinois. * * * * *
d. Information establishes that a shipment of six cartons, weighing 300 pounds, of radio equipments was made by Mr. Paulette on 16 May; 1960, by air to Alva Eadio Industries, 4900 Linkershim Boulevard, North Hollywood, California. Shipment was made via Delta Air Lines .from Lexington, Kentucky, with overlay the night of 16 May 1960 at Cincinnati, Ohio, where upon inquiry they were located and ordered held pending release instructions. Subsequent release instructions were given and the shipment proceeded for delivery to TWA at Chicago, Illinois. Shipment arrived, at addressee destination where they were seized and impounded by the Federal Bureau of Investigation. •. .
e. Information available at this stage of the continuing investigation indicates the full cooperation of Mr. Harry Gartzmañ with Investigative' Agencies and, as yet,-fail to conclusively, indicate guilty knowledge on his part as to the source of the property consigned to his firm.
f. There , are indications of many;, diverse and divergent ramifications to the present investigation which have not been fully developed and exploited by the .various investigative agencies and it would be highly speculative to attempt any prognoses of the final results and determinations educed therefrom.
t}i t}t % *[♦
' 8. (a) By letter dated May 4, 1961, the Assistant U.S. Attorney for the Eastern District of Kentucky advised the Sixth U.S. Civil Service Eegion, Cincinnati, Ohio, that the U.S. Attorney did not desire to disclose the facts or the witnesses that would be relied upon by the Government in the trial of Sterling Eiddle and plaintiff, because such information would then be available to Mr. Eiddle and plaintiff. For that reason, the Assistant U.S. Attorney stated that the information would not be divulged until after the trial had been terminated.
(b) By letter dated May 11, 1961, plaintiff’s attorney was advised by the appeals examiner of the Sixth U.S. Civil Service Eegion, Cincinnati, Ohio, that, when the investigator of the Eegion sought to develop the evidence bearing on the *621 adverse actions taken in the cases of Mr. Riddle and plaintiff, the office of the; U.S. Attorney for the Eastern District of Kentucky requested that agency witnesses not be contacted and that, in accordance with commission internal instructions, further action must be suspended pending reléase from that office..
9. Beginning on June 6,1961, plaintiff and Sterling Riddle were tried before a jury in the U.S. District Court at Lexington, Kentucky, and the trial resulted in a hung jury.
10. (a) Beginning on March 12, 1962, plaintiff, Robert Paulette, and Sterling Riddle were tried before a jury in the U.S. District Court at Lexington, Kentucky.
(b) On March 14, 1962, at .the conclusion of the Government’s case, the Assistant U.S. Attorney who was trying the case for the Government moved that the charges against Monroe Prater (plaintiff herein) be dismissed. The Assistant U.S. Attorney then stated: “We have studied the evidence in this case very carefully and we feel that we have not made out a case against the defendant Monroe Prater.” Whereupon the court entered an order dismissing the charges against plaintiff.
(c) Thereafter, on the same, day, counsel for the defendants Robert Paulette and Sterling Riddle moved the court for judgments of acquittal on the ground of lack of evidence of theft. In sustaining the motion, the court stated:
Ladies and Gentlemen, I have considered the motion that has been made, by the attorneys for Mr. Paulette and Mr. Riddle for their acquittal on the ground of lack of evidence of theft. We are no longer concerned with Mr. Monroe Prater because the United States Attorney has moved for his acquittal and an order is being entered accordingly.
So we have considered with care the evidence that has been presented designed to establish beyond a reasonable doubt that 25, more or less, RT-196/PRC-6 radio receiver-transmitters, property of the United States, were stolen, purloined or converted by embezzlement at the place charged in the indictment and shown in the testimony. There are two counts, one claimed to have happened in December, 1959 and the other in February, 1960. The Government relies upon the testimony' introduced showing that there was, according to the books, some shortage when inventories were made. Conceding *622 that to be true, that doesn’t show that something has been stolen, because the testimony in this ease shows that there was a consistent practice of selling parts of these sets. There was a system of examining them as they -were coming in in large quantities. If one was found to be lacking or unusable economically, it was passed on as salvage or surplus. Those parts were susceptible of being put together, according to the testimony here.
The mere fact that Mr. Paulette, who had been a considerable customer out there, buying this electronic equipment for quite a while and in large quantities, happened to be selling some of them in California doesn’t show that he stole them; and without showing that they were stolen, there is no case here. Nobody shows a fact upon which it can be inferred that they were even stolen or that this man Paulette or this man Riddle had anything to do with stealing them.
So without going into any further details of the matter, we have a case here where the evidence is insufficient to sustain a verdict and I am sustaining the motion for acquittal and these defendants are discharged.
(d) Mrs. Paulette, who had testified at the preliminary hearing (finding 3(c)), was not subpoenaed as a witness and did not testify.
' 11. (a) Under date of March 28,1962, on behalf of plaintiff and Sterling Riddle, plaintiff’s attorney transmitted to the director of the Seventh U.S. Civil Service Region, Chicago, Illinois (which in the intervening time became the appropriate region), an attested copy of the order of the court sustaining the motions for judgment of acquittal, entered March 14, 1962. The attorney stated that he assumed “that the conclusion of the criminal charges in their favor will result in favorable action being taken in their Section 14 appeals,” and requested that necessary steps be taken to dispose of their appeals.
(b) In a responding letter dated March 30, 1962, tire regional director of the Seventh U.S. Civil Service Region advised plaintiff’s counsel that, although plaintiff and Sterling Riddle had been acquitted, the Region must still proceed with the adjudication of the cases on the substantive matters mentioned in the letter of charges, and that both cases were being reactivated as of April 2, 1962. The attorney was invited to submit additional information to the Region office.
*623 (c) By letter dated March 30, 1962, the personnel officer of the Depot advised the director of the Chicago Region that the evidence developed in the investigation of the case against plaintiff and Sterling Riddle was in the custody of the U.S. Attorney and not previously available, and that the release, of this evidence was being requested for the director’s consideration prior to a final decision on the appeal.
(d) On April 25, 1962, the personnel officer of the Depot transmitted to the Chicago Region, to the attention of the appeals examiner, an affidavit of the special agent of the Federal Bureau of Investigation who had testified at the preliminary hearing on June 1, 1960, the transcript of the testimony of the special agent in the trial which began on June 6, 1961, and which resulted in a hung jury, the transcript of the preliminary hearing, and a copy of the letter dated April 19,1961, from the personnel officer to the appeals examiner of the Sixth Region (finding 7 (b), supra). The foregoing affidavit was based largely on information from a confidential source, known by the affiant to have previously given reliable information.
12. On April 30,1962, by agreement of the parties, an order was entered by the U.S. District Court at Lexington, Kentucky, that there be returned to Robert Paulette all of the “PRC-6 and PRC-1Ó radios” then in the hands of the U.S. Marshal.
13. (a) By letter dated May 15,1962, plaintiff’s attorney requested the Chicago Region of the U.S. Civil Service Commission to “render decisions on several procedural points, before continuing with the actual development of evidence” in the appeals of plaintiff and Sterling Riddle. The attorney contended that the judgment of acquittal was res adjudicaba of the charges against plaintiff and Mr. Riddle and that the issue presented in the charges could not be collaterally determined in another proceeding. He also objected to the consideration by the Commission of the transcript of the testimony given at the preliminary hearing. Finally, he asserted that none of the records of the criminal proceedings should be considered by the Commission as substantive evidence but, that if such records were so considered, then the numerous exhibits which were returned to the *624 parties after the trial should also be considered by the Commission.
(b) By responding letter, dated May 18, 1962, plaintiff’s attorney was advised by the regional director that the acquittal of an employee of an indictment charging him with the commission of a criminal offense cannot be treated as invalidating the action removing such employee from his position for the good of the service, and that the other points contained in the letter of plaintiff’s attorney should be made at the time of the Commission hearing on the merits of the case.
14. (a) On June 4,1962, plaintiff filled out and signed a form of the U.S. Civil Service Commission in which he stated that he did not desire a hearing on his appeal.
(b) On the same date, plaintiff submitted to the Commission his affidavit denying that he had anything to do with the embezzling, theft or conversion of any Government property at any time.
(c) Included in the documents before the Chicago Begion of the U.S. Civil Service Commission was a report of an investigation of plaintiff made on May 28, June 4, and June 5,1962, by the Investigations Division of the Seventh Begion of the U.S. Civil Service Commission. Among the 16 exhibits which accompanied this report were 2 affidavits, both dated June 5, 1962, of the civilian personnel officer of the Lexington Signal Depot. The affidavits summarized the proceedings and set forth the reason for plaintiff’s dismissal. Also included in the report was an affidavit of plaintiff’s attorney, which was submitted in rebuttal to one of the above-mentioned affidavits of the civilian personnel officer and which set forth the position of plaintiff.
15. On June 25, 1962, the Chicago Begion, U.S. Civil Service Commission, issued its. decision on plaintiff’s appeal, reading in part as follows:
Part III. ExamiííatioN or Procedures
* * * * . *
It is, therefore, found that all the procedural requirements of the Act. and Commission regulations promulgated thereunder have been met in this case.
*625 Part V. The Charges and Analysis oe the Evidence
The single charge in this case reads as follows: “You, Robert Paulette and Sterling O. Riddle, Jr., are charged with having unlawfully stolen, purloined, and knowingly converted to your own use one or more RT 196/ PRC-6 radio receiver transmitter units which were the property of the United States of America, at Lexington, Kentucky, on or about 1 February 1960.”
‘ % Í& H*
The basis for this charge is information provided by Mrs. Shirley Paulette, the wife of Robert Paulette to the FBI which, in turn, was referred to officials of the Lexington Signal Depot, and which was the subject of testimony by Mrs. Paulette at a preliminary hearing before a United States Commissioner on June 1,1960 * * *.
In substance, '* * *, Mrs. Paulette testified that she had known appellant since the first of the year 1960, having become acquainted with him when “he was delivering some government property or merchandise”, later identified as walkie-talkies, at her home. She stated that this occurred in about February; that delivery was made by both appellant and Sterling Riddle; that she did not know where the radios delivered by appellant and Riddle came from; that there was an exchange of articles between appellant, Riddle and her husband one evening when the walkie-talkies were put in her living room. Apparently ' all these instances referred to relate to the same event.
At this criminal trial, the government unsuccessfully attempted to establish that a particular group of radios had been stolen from the Depot. The fact that the criminal suit was dismissed is not a bar to the administrative proceedings instituted against appellant. The basis for the charge was information provided _by_Mrs. Paulette, to which she later testified at the preliminary hearing. The Court’s finding that there was not sufficient evidence to justify submission of the case to the jury does not set aside the considered action of the employing agency, which in this case was based on the statement of an eye-witness to the delivery of radios to her home by appellant and Riddle. The fact that there was insufficient proof that the radios Mrs. Paulette saw delivered were- the same ones introduced into evidence at the trial does not establish that the theft was not committed. Whether or not the indictment and charges were worded the same is immaterial. * * *•
*626 The testimony of Mrs. Paulette at the preliminary hearing was under oath. There is no evidence that she perjured herself. Her husband, in exhibit 8, and the attorney, in exhibit 12, state that Mrs. Paulette repudiated her statements at a subsequent interview by an FBI agent. For the purposes of this decision, such a repudiation is conceded. She did not testify at the criminal trial, nor was she called upon to testify, according to her husband, exhibit 8. Mr. Paulette stated that at the time of her testimony Mrs. Paulette had sued him for divorce. Her reasons for repudiating the statement could be numerous and whether or not she could have been forced to testify at the criminal case involving appellant, Riddle and her husband, had she been called upon to testify, is a matter of admissability of evidence only to be decided upon in a Court of law. In this instance, it is found that the testimony of Mrs. Paulette at the preliminary hearing is admissible as evidence in this case. Further, it is found that this testimony can be relied upon in deciding this appeal. The charge is sustained.
The other documents submitted by the agency in support of its action against appellant were a transcript of testimony by the FBI agent at the preliminary hearing and a transcript of the testimony of Morris A. Parker, a military police and criminal investigator for the Department of the Army. This testimony has not been considered in arriving at the decision in this case.
Also in the file is considerable information pro and con relating to whether or not certain specific radios had been stolen by appellant, Riddle and Paulette. No weight was given to any of this information in reaching the decision in this case.
Part YI. Findings and Recommendation
It is found that all the procedural requirements as provided for in the Veterans’ Preference Act of 1944, as amended, and the Commission regulations promulgated thereunder, have been met. It is found that the charge has been sustained by the evidence and that removal was effected, for the purpose of promoting the efficiency of the Service, which is a requirement of Section 14 of the Veterans’ Preference Act.
* * * * *
16. (a) By letter dated June 29, 1962, addressed to the Board of Appeals and Review, U.S. Civil Service Commission, "Washington 25, D.C., plaintiff’s attorney filed a timely appeal from the decision of the Chicago Region.
*627 (b) The Board of Appeals and Beview had before it not only the documents which had been before the Chicago Begion, but also a brief submitted by plaintiff’s attorney and a reply brief submitted by the commanding officer of the Depot.
(c) The body of a letter dated November 19, 1962, addressed to plaintiff’s attorney from the chairman of the Boai’d reads as follows:
Beference is made to your further appeal in behalf of Mr. Monroe Prater from the decision of the Commission’s Chicago Begional Office sustaining, under Section 14 of the Veterans’ Preference Act, the action of the Personnel Officer removing him from the position of Guard, GS-3, $4390 per annum, effective April 12,1961, at the Army Lexington Signal Depot, Lexington, Kentucky, on a charge relating to the theft of Government property.
The Board of Appeals and Beview has given careful consideration to all the evidence developed during the processing of the appeal in the Begional Office as well as the representations submitted subsequent to the Begional Office decision.
In its decision the Begional Office held that all the procedural requirements of the Act and the Commission’s regulations promulgated thereunder had been met in effecting Mr. Prater’s removal. That decision also held that the charge was sustained by the evidence and that removal was effected for the purpose of promoting the efficiency of the service, which is a requirement of Section 14 of the Veterans’ Preference Act.
You state in your appellate representations that it was proven to the satisfaction of the trial judge that the radio receiver-transmitter sets were purchased by Mr. Paulette thereby implying that the administrative charges against Mr. Prater could not be sustained. According to the “Transcript of Proceedings on Motion to Withdraw Exhibits” held in the U.S. District Court, Eastern District of Kentucky, on March 14, 1962, the Court noted, in substance, that no proof had been introduced to support the contention that the radio receiver-transmitter sets had been purchased.
You also contend that the judgment of the Court in the criminal case constitutes res adjudicata to the issues presented in this administrative proceeding. The Board notes that this contention was made to the Begional Office in your letter of May 15,1962, to which the Begional *628 Office replied on May 18, 1962, advising you, with, case citations, that the acquittal of an employee of an indictment charging him with the commission of a criminal offense cannot be treated as invalidating the action removing such employee from his position for the good of the service. The Board concurs in that statement by the Regional Office and incorporates that finding as a part of this decision.
Other than the foregoing, no new or additional representations were submitted with your appeal to this office. After considering all the facts and circumstances of the case, the Board has found, as did the Regional Office, that the agency complied with all the procedural requirements and regulations in effecting Mr. Prater’s removal. The Board also concurs in the analysis and findings of the Regional Office concluding that the charge is sustained. On the strength of the sustained charge, the Board has concluded that Mr. Prater’s removal was warranted; that, it was effected for such cause as will promote the efficiency of the service within the meaning of Section 14 of the Veterans’ Preference Act; and that the decision to effect removal rather than take some lesser disciplinary action was not unreasonable, arbitrary or capricious. Accordingly, the decision of the Chicago Regional Office, a copy of which was furnished you on June 25,1962, is affirmed.
17. At the trial in this court, plaintiff, Sterling Riddle, and Robert Paulette denied that they had stolen the walkie-talkie radio equipment. Both plaintiff and Robert Paulette denied that in February 1960 plaintiff had delivered walkie-talkie radios to the home of Robert Paulette, as testified to at the preliminary hearing by Mrs. Paulette. Mr. Paulette further testified that he had purchased surplus-component parts for walkie-talkie radios, from the Depot and that in May 1960 he shipped 52 walkie-talkie radios to California.
18. From the entire record in the case, it is found that the action of removal of plaintiff was not arbitrary and capricious.
CONCLTJSION 0E LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the petition is dismissed.

 Section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 387, 390, 5 U.S.C. § 863 (1958), reads in part:
No permanent or indefinite preference eligible, -who has completed a probationary or trial period employed in the civil service, or in any estab *612 lishment, agency, bureau, administration, project, or department, herein-before referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge suspension for more than thirty days, furlough without pay, or reduction in rank or compensation is sought shall have at least thirty days’ advance written notice (except where there is reasonable cause to believe the employee to be guilty of a crime for which a sentence of imprisonment can be imposed), stating any and all reasons, specifically and in detail, for any such proposed action; * * *

 Rule 5(c) of the Rules of Criminal Procedure for the U.S. District Courts, 18 U.S.C. App. (1958), relating to preliminary examinations, provides in part:
* * * If from the evidence it appears to the commisioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. * * *