Joseph J. **HOLMAN**, Jr.

v.

The **UNITED STATES**.

No. 23–65.

United States Court of Claims.

Oct. 13, 1967.

5. The delay due to the changed condition is detailed in finding 21.

Joseph J. Holman, Jr., Los Angeles, Cal., pro se.

Edgar H. Twine, Washington, D. C., with whom was Acting Asst. Atty. Gen., Carl Eardley, for defendant.

Before COWAN, Chief Judge, JONES, Senior Judge, and LARAMORE, DURFEE, DAVIS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

On August 22, 1963, plaintiff, a GS-3 nursing assistant for the Veterans Administration, Los Angeles, was removed from his position on a charge of immoral conduct. He is now before this court seeking back-pay from his date of removal, plus night differential and holiday time. He alleges the affirmance by the United States Civil Service Commission Board of Appeals and Review of the order of removal was "arbitrary, capricious, malicious, and, implied bad faith * * *."

This case is before the court on cross-motions for summary judgment.

Defendant has offered in support of its motion what appears to be the entire administrative record. Plaintiff has not had counsel appearing for him at any phase of this case, and while not ignorant or inarticulate, he has not aided us as much as an attorney probably would have done. At the same time, he has made a record of considerable bulk and volume. We have endeavored to deal with the plaintiff's contentions, to satisfy ourselves that no fundamental unfairness occurred, and to ascertain whether the action was based on substantial evidence.

A prior removal action had aborted for failure to detail the offense correctly. On June 27, 1963, plaintiff was sent a second notice of proposed removal. This time the charge read:

*Immoral Conduct.* At about 4:00 a. m. on Saturday, January 26, 1963, in the public rest room of the Art Theater at 551 South Main Street, Los Angeles, California, you were observed by two members of the Los Angeles Police Department, officers William Welsch and Richard Haldi, while you engaged in fellatio with an unidentified male.

Conduct such as that with which you are being charged is in violation of Veterans Administration stated policy which spells out the need for high moral and ethical standards of behavior that reflect credit on the Federal Government.

Plaintiff made a timely reply, and demanded a hearing under V. A. hearing procedure.[1] The hearing committee consisted of three fellow employees, one of whom was plaintiff's nominee. At the close of the hearing the committee chairman asked the plaintiff if he, as the employee in the case, had had every oppor-

---

1. See appendix A for part of the opening remarks made by the Chairman of the hearing committee.

tunity to state his case. In response to this Holman answered:

> In this hearing, I've had more than enough opportunity, so much that I've talked too much. For this hearing only, I'm talking about, here this morning is what you're talking about.

After making four fact findings on the charge made against the plaintiff, the hearing committee stated that "Based on its consideration of the evidence of record in Mr. Holman's case, * * * the evidence was more than sufficient to sustain the charge of immoral conduct."

At his hearing the plaintiff was confronted by Officer Welsch and had full opportunity to cross-examine him, and, also, to say what he wished on his own behalf, but the hearing committee concluded that "the testimony of the arresting officer, William H. Welsch, * * * is believed to be a true and accurate account concerning the circumstances which led up to Holman's arrest and he (Holman) committed the offense as charged."

 Plaintiff complains he was not shown the official police reports made in this case until the hearing. However, 10 days before this hearing he was offered an unofficial report of his arrest that had been furnished to the Director by the agency's Protective Section. This report contained information gleaned from the official police reports and was as detailed as those reports themselves. Mr. Holman refused the offer to see the report. The Director himself had obtained copies of the official police reports approximately but two days before plaintiff's hearing and he had made them a part of the hearing record.

On August 16, 1963, plaintiff received his second removal letter from the Director, Veterans Administration Center. It stated that his removal was to be effective August 22, 1963, and it was based on the following reason: "The charge stated in the notice of proposed removal is sustained." Plaintiff was again informed that his reply had been carefully considered, along with the report of the Employee Hearing Committee and the evidence developed.

Again plaintiff appealed the removal decision to the Veterans Administrator. This time however, on December 11, 1963, the decision was affirmed. The Administrator specifically noted that plaintiff's hearing was conducted fairly and in accordance with Veterans Administration procedures. He also stated:

> An officer of the Los Angeles Police Department testified under oath at your Veterans Administration hearing that he observed you engaging in the immoral act with which you are charged. You are also positively identified in the official arrest [word illegible] signed by this officer which records his observation of your immoral conduct.

In the same letter, Holman was informed of his right to appeal the decision to the San Francisco Regional Office of the United States Civil Service Commission. This he did on December 24, 1963.

Holman received a hearing before the San Francisco Regional Office on January 17, 1964. In a detailed, four page decision, rendered February 10, 1964, the Appeals Examiner concluded:

> In review, we find that all procedural requirements were met by the agency in effecting the removal of Mr. Holman.
>
> On substantive grounds, we find that the action was taken for such cause as will promote the efficiency of the service. For these reasons we find that the removal of Mr. Holman should be sustained.

Mr. Holman had now reached the last stage of the administrative review procedure open to him. On February 13, 1964, he appealed the Regional Office decision to the United States Civil Service Commission Board of Appeals and Review. On May 8, 1964, said Board concurred in the affirmance of the removal decision rendered by the Regional Office. This too was a detailed decision. The Chairman of the Board of Appeals and Review specifically reviewed and com-

mented upon each of the representations Holman had made in his appeal (except for those considered repetitious or not pertinent to the issues in the case). All of them were found to be lacking of merit. The Chairman concluded with the statement that procedurally and on the merits "the decision to effect removal was not unreasonable, arbitrary or capricious."

Before we discuss the nature of our scope of review in this case, a further part of this story must be told.

Plaintiff and another, one Maldonado, were criminally tried as co-defendants charged with the same acts which led to Holman's removal from his position with the V. A. A jury found them guilty as charged. However, on March 15, 1966, in People v. Maldonado,[2] the District Court of Appeals for the Second Appellate District of California, reversed the convictions.

As we read that decision, the grounds for reversal were as follows: first, as to Maldonado, he had made an oral confession in police custody before he was advised of his constitutional rights to remain silent and have legal counsel; second, as to Holman, he did not have a fair trial because the inadmissible Maldonado confession was admitted and corroborated the police story as against him too, and also because of the testimony of the arresting officer to the effect that he had interviewed Holman after his arrest, had stated that Holman himself knew he was guilty, and had asked Holman why he had done it. To this Holman had failed to reply. It was held that the admission of his testimony was in error because the silence of an accused in the face of an accusatory statement cannot be used to justify an inference adverse to him.

*None of this objectionable evidence* was testified to at plaintiff's V. A. hearing. But the police arrest report, received as an exhibit, did contain it. The committee, nevertheless, hardly could have believed that plaintiff remained silent when accused, in view of the testimony it heard. Plaintiff, questioning the officer at the V. A. Hearing, said:

And from the very first I told you that you were in error on your identification. Is that correct or not?

*Welsch.* You told me that you didn't do it, not that I was in error of identification. You admitted being in the room.

He never denied being in the room. Plaintiff neither objected to receipt of the arrest report nor asked for additional time before the hearing closed to acquaint himself with its contents. The committee's findings refer only to the police officer's oral testimony.

Plaintiff now contends that the reversal of his criminal conviction "shows there can be no substantial evidence absent a fair trial"; that the administrative review procedures afforded him did not provide him with a fair trial; that the decision to remove him, not being based on substantial evidence because based on an unfair trial, was "arbitrary, capricious, malicious, and, implied bad faith"; and that he is "not guilty."

Government counsel has drawn our attention on this point to the case of Prater v. United States, 172 Ct.Cl. 608 (1965). There a government employee's criminal trial resulted in a hung jury. In a later trial, upon motion of an Assistant United States Attorney, the charges were dismissed on the ground of insufficient evidence. However, the employee was dismissed from his government position on the same charges involved in the criminal proceeding. We held that it does not necessarily follow that removal by administrative authorities is arbitrary and capricious where such removal is based on the same charge as was dismissed in a prior criminal proceeding. We said (at p. 615):

It is not the province of this court to determine whether or not plaintiff committed the offense for which he was charged both criminally and in the removal action. The case is before the

---

court based upon allegations that the *removal* action was arbitrary and capricious. *These* allegations must be clearly established to be sustained. [case cited]. No such showing has been made. (Emphasis supplied.)

Plaintiff does not deny that the act charged, if performed, would have warranted his removal: he agrees "with the law that prohibits it." He opposed his denial that he committed the act to the arresting officer's statement that he did. His reliance here is solely on procedural errors and on charges against the integrity of the administrative determinations involved.

■ Plaintiff claims he was denied counsel in the removal proceedings, although before the hearing he was told he could be represented by a person of his choice. His theory of such denial is that he could afford to purchase only one day of an attorney's time, so he waited until he learned at 4:00 or 4:15 p. m. one afternoon that the whole case would be heard the following day, and then it was too late to acquaint an attorney with the facts. But there is not a word in the record to suggest the V. A. would have refused to cooperate with an attorney to set a day certain for the hearing conformable to the attorney's convenience. Plaintiff we find acted *pro se* of his own free choice.

Plaintiff was clearly warned at the hearing (see appendix) that he must get anything he had to charge into the record to be made, or the agency would not consider it. In the face of this, he radiated satisfaction at the hearing, only to bombard the V. A., the Civil Service Commission, and us with all sorts of charges when the result of the hearing was adverse. To the extent, if any, that plaintiff's procedural complaints had substance, he should have urged them at the hearing, when they could have been corrected.

■ The errors that plaintiff alleges to have occurred are 15 in number. We have considered them all, but "[i]t is not our function to substitute our judgment for that of the employing agency or the Civil Service Commission. Our review is limited to the sole question of whether their action was reasonable in the light of all the evidence." Guiness v. United States, 149 Ct.Cl. 1, 6, cert. denied 363 U.S. 819, 80 S.Ct. 1257, 4 L.Ed.2d 1517 (1960). The question is: does the record contain substantial evidence to support the administrative decision? Moon v. Celebrezze, 340 F.2d 926, 930 (7th Cir. 1965). If it does the petition must be dismissed. "If we were to [make a redetermination of the merits upon a record which supports the administrative decision], we would be assuming the role of a superagency rather than providing a check against unreasonable and arbitrary results." Id. That role we do not intend to assume. We agree with the Commission that the evidence supporting the administrative decision was substantial. An eye witness to plaintiff's act testified about it in full and abhorrent detail.

■■ In the instant case the second notice of removal, which differed from the first (held to be insufficient) in that the address of the theater was correct, the arresting officers were named, the immoral conduct was specifically described ("fellatio"[3]) and the V. A. policy violation was set out, was sufficient to enable the plaintiff to understand the reasons for the proposed separation, and to join issue with them. In arguing his case, orally and by brief, plaintiff has failed to establish his allegations of arbitrary and capricious administrative action. And, "[t]here is no showing that any of the actions by the administrative officials were prompted by malice or were in bad faith. [case cited]. In the absence of clear evidence to the contrary, it is presumed that public officers have properly discharged their official duties.

---

3. See Grant v. United States, 162 Ct.Cl. 600, 604 (1963), where this court, in speaking of the immoral conduct alleged therein, as well as herein, referred to it as "fellatio."

[case cited]. Plaintiff's petition must therefore be dismissed." Prater v. United States, supra, 172 Ct.Cl. at 615.

In accordance with the above opinion, defendant's cross-motion for summary judgment is therefore granted, plaintiff's motion is denied and judgment is entered for the defendant. The petition is dismissed.

### Appendix A

The purpose of this hearing is to give Mr. Joseph J. Holman, Jr., a chance to be heard on the charges preferred against him in the letter of proposed removal dated June 27, 1963.

The V. A. had one basic hearing procedure for handling the categories of cases specified in paragraph 2a of Section C, Chapter 12, MP-5. It is the policy to hold only one hearing under this procedure for the consideration of any one or more of these categories that may be involved in the same situation. The V. A. recognizes, for example, that an employee's case may involve a proposed adverse action, collateral grievances, and related allegations of discriminatory practice. The objective is to eliminate the duplication of hearing efforts in those cases where evidence having a bearing on more than one of these categories logically may be presented at one hearing. Therefore, the consideration of employee cases will be governed by these basic principles:

Both the employee and supervisory officials will have a complete opportunity to present before one hearing committee all pertinent aspects involved in the case that are related and concerned with the same basic issues and essentially the same body of evidence.

Once the hearing has been held, it will not be reopened for the purpose of injecting new or additional allegations which could reasonably have been raised at the time of the hearing. Decisions after hearing will embrace all aspects of the case on the basis of the one hearing record.

My sole function is to preside as non-voting chairman and to assure an equitable, orderly and expeditious hearing. The function of the committee members is to see that all the facts are developed on which a fair decision may be based. After the close of this hearing, I will turn over to the committee members the complete record and furnish them with a verbatim recording of the hearing proceedings. The committee will then prepare its statement of facts to the Director who will make the decision. I will not participate in the committee's deliberations.