Kashiwa, Judge,
dissenting:
I respectfully dissent from the majority decision on its disposition of charge II. Plaintiff’s behavior was in open and direct violation of one of the most important rules in the area of conflict of interests in the Rules of Conduct for Internal Revenue Service Employees, Section 1942.83, Self-Disgudliflcation from Certain Assignments. Said section reads as follows:
When an employee receives an assignment involving a person acting, either as principal or agent, with whom he has had social, business or other relationships of a nature that might impair, or give the appearance of impairing, the employee’s impartiality or independence, he will discuss with his supervisor the possible need to have the matter reassigned. This applies particularly to assignments involving investigation, tax examination, and adjudication of matters at issue between the public and the Service.
At this point it is well to repeat the reason why this conflict of interest rule is a part of the Rules of Conduct for Internal Revenue Service Employees. President Kennedy in his message to Congress on the subject “Ethical Conduct in Government,” April 27, 1961, well stated the basic reason to be:
No responsibility of Government is more fundamental than the responsibility for maintaining the highest standards of ethical behavior by those who conduct the public business. There can be no dissent from the principle that all officials must act with unwavering integrity, absolute impartiality, and complete devotion to the public interest. This principle must be followed not only in reality but in appearance. For the basis of effective government is public confidence, and that confidence is endangered when ethical standards falter or appear to falter.
We must construe Section 1942.83 with the above-quoted basic ethical standards in mind. The majority gave the word “assignment” a narrow construction. I disagree with such a narrow construction but agree with the more meaningful *256 definition and application to the facts given by the Civil Service Commission’s New York regional office.[1] When the special files with sealed envelopes to be used by the Organized Crime Division (OCD) in its New Jersey investigation of racketeering with the Justice Department’s Strike Force were left in custody of appellant or his Chief, it was a special assignment. And appropriately the New York regional office found it “to be a most important assignment.” After January 15, 1969, the rules of conduct referred to in the section came into operation and plaintiff, who was not an ordinary IBS employee but in the high position of Assistant Chief of the Audit Division, had a choice of actions, either taking the investigation seriously and complying with the ethical standards of Section 1942.83 or continuing his relationship with Dameo as though nothing had happened. Plaintiff chose to do the latter, although he knew that an Organized Crime Division investigation on racketeering was going on with the Justice Department’s Strike Force. Plaintiff admitted choosing to 'carry on with Dameo as follows after January 15 when he knew that Dameo was on a list of eleven names whose files were requested to be delivered to the Organized Crime Division:
1) On January 21, 1969, while he and two other persons were having lunch at the Boost Bestaurant, Newark, New Jersey, during the period from approximately 12:12 p.m. to 1:15 p.m., Philip Dameo approached his *257 table, spoke with him, and paid his lunch bill; then, at Philip Dameo’s invitation, he and his companions went into the area of the dining room where Mr. Dameo’s table was located.
2) On February 19, 1969, after having lunch at the Roost Restaurant, Newark, New Jersey, he left with Philip Dameo at approximately 2:45 p.m.
3) On February 26,1969, he met Philip Dameo at the Roost Restaurant, Newark, New Jersey, at approximately 11:52 a.m.; had drinks at the bar, for which Philip Dameo paid; and proceeded with Philip Dameo to a dining room for lunch. He remained there in Philip Dameo’s company until at least 2:20 p.m.
4) On March 18,1969, he had lunch with another person in the dining room at the Roost Restaurant, Newark, New Jersey, from approximately 12:35 p.m. to 1:20 p.m. He met Dameo there again on that day.
5) On April 9,1969, he and his wife had dinner with Mr. and Mrs. Dameo and others at the Arch Restaurant, Short Hills, New Jersey, from approximately 7:20 p.m. to 11:45 p.m.
The April 9 meeting took place even after plaintiff was given added notice at an April 7 meeting with other IRS officials that Dameo was considered “by the Service to be a disreputable person.” Plaintiff really stopped his activities with Dameo and reported to his superior as required by Section 1942.83 above mentioned only after he discovered that he himself was under surveillance for his friendship with Dameo.
In a suit to recover back wages for alleged arbitrary dismissal from civilian Government employment, this court has held that it will not substitute its judgment for that of the regional agency or the Civil Service Commission, but rather determines whether their action in separating the plaintiff was reasonable. Where there is substantial evidence supporting the administrative action and decision, this court will not disturb it. Holman v. United States, 181 Ct. Cl. 1, 383 F. 2d 411 (1967). This court stated in Morelli v. United States, 177 Ct. Cl. 848, 858 (1966):
The power of removal from office in the executive branch of the Federal Government, absent some specific provision to the contrary, is incident to the power of appointment. Keim v. United States, 177 U.S. 290, 293 (1900). Where an administrative agency has complied *258 with the prescribed procedural requirements, the Court of Claims can only review the action to determine whether the officials who effected the dismissal acted arbitrarily, capriciously or were so grossly erroneous as to be in bad faith, as for instance where they may have acted without substantial evidence to support their decision or where they exceeded their authority. Bayly v. United States, 99 Ct. Cl. 598 (1943); Love v. United States, 119 Ct. Cl. 486, 493, 98 F. Supp. 770, 774 (1951) cert. denied, 342 U.S. 866.
In civilian pay cases we have said that the presumption must always be that the Government officials have acted in good faith. Greenway v. United States, 175 Ct. Cl. 350, cert. denied, 385 U.S. 881 (1966). We have also observed that it takes well-nigh irrefragable proof to induce the court to find otherwise. Knotts v. United States, 128 Ct. Cl. 489, 121 F. Supp. 630 (1954).
My above comments on charge II alone are sufficient for me to sustain the decisions of the Civil Service Commission’s New York Regional Director and the Board of Appeals and Review. Therefore, a discussion of charge I is unnecessary. I believe that a summary judgment should have been allowed the defendant based on charge II only and plaintiff’s motion for summary judgment should have been denied.

 “Appellant contends that he had no assignment with regard to Dameo. The January 15, 1969 request from Internal Auditor Quarry to turn over 11 OCD administrative files he claimed was merely a clerical assignment, not a formal duty, assignment. The record clearly shows that he and his Chief were in control of the Audit Division OCD administrative files. Anyone seeding such a file for review had to obtain the approval of the appellant or his Chief. The assignment of the control of these files to the appellant and his Chief was, In our opinion, a most Important assignment. Obviously, this control was placed in the hands of the Chief and Assistant Chief of the Audit Division because management wanted to be sure that only authorized persons could obtain such highly confidential- files. True, the pulling of a file from a cabinet is a clerical operation but the decision to have such a file removed from the cabinet and turned over to another person for review was a highly responsible act. Further, as Assistant Chief of the Audit Division the appellant had responsibility over the Revenue Agents who did conduct the audits and had access to the files of the Audit Division. We think that his responsibility was such that as soon as he learned of the existence of an OCD administrative file on Dameo, the sections of the rules of conduct referred to in the charges came into operation.”