Goldie I. DURCO, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 17–87C.

United States Claims Court.

March 11, 1988.

Robert M. Stefanon, Greensburg, Pa., for plaintiff.

Jonathan S. Baker, Dept. of Justice, Washington, D.C., with whom was James M. Spears, Acting Asst. Atty. Gen., for defendant.

OPINION

ROBINSON, Judge.

This case is before the Court on cross-motions for summary judgment. The action arises from the death of plaintiff's husband, John J. Durco, a volunteer firefighter, on January 13, 1985. Plaintiff seeks to reverse the determination made by the Director, Bureau of Justice Assistance ("BJA"), United States Department of Justice, that she was not entitled to payment of a $50,000 survivor benefit pursuant to the Public Safety Officers' Benefits Act ("PSOBA"), 42 U.S.C. § 3796, *et. seq.* Plaintiff contends that the denial of such a benefit is the result of arbitrary and capricious administrative action because errors of fact and law were made by the defendant. Defendant seeks affirmation of the Director's adverse determination on the grounds that it was made in accordance with the statute and implementing regulations, was supported by substantial evidence, and was not arbitrary or capricious.

Having considered the parties' written submissions and the administrative record presented, the Court concludes that the plaintiff's motion for summary judgment must be denied and the defendant's cross-motion for summary judgment must be granted. The reasoning of the Court follows.

*Facts*

On January 13, 1985, at approximately 2:00 a.m., volunteer firefighter John J. Durco left his house in response to a fire alarm to report to the Salem Township Volunteer Fire Company, Pennsylvania. Mr. Durco was dressed in his full firefighter's uniform which weighed 28 pounds. It was snowing and windy that night. The temperature was approximately 18 degrees fahrenheit at 2:00 a.m., although according to weather reports the wind chill factor could have lowered the temperature for a party exposed to the wind to between −4 degrees fahrenheit and −10 degrees fahrenheit. Mr. Durco walked approximately 182 feet from his house to a point where his son, also a volunteer firefighter for Salem Township, picked him up in a Blazer automobile and drove to the fire station. There is no evidence of record as to the temperature inside the son's car during this drive, but certainly, it was no lower than 18 degrees fahrenheit, the temperature outside. The drive to the fire station, a distance of approximately 1,570 feet, required about three minutes. Thereafter, Mr. Durco walked approximately 61 feet from his son's car to the fire station entrance.

Upon entering the fire station, Mr. Durco was immediately placed on standby duty with other firefighters. The temperature in the fire station is generally between 50 and 55 degrees fahrenheit with the station door closed. The door to the fire station was open, though, so that the fire truck could be started in order to get 60 pounds of air in the air brakes. However, there is no evidence of record regarding the actual temperature in the back of the fire station where Mr. Durco was sitting while on standby duty, but certainly, it was no lower than 18 degrees fahrenheit, the temperature outside.

While sitting in the back of the fire station in full uniform and before suffering the heart attack, Mr. Durco was talking with other firemen. He showed no symptoms of pain and expressed no discomfort from his trip to the fire station due to the cold weather, or from breathing cold air during the trip to the fire station, or from the temperature in the fire station.

Approximately 20 minutes after arriving at the fire station, Mr. Durco suffered cardiac arrest. An ambulance was called and cardiopulmonary resuscitation ("CPR") was administered to Mr. Durco at the fire station. Shortly thereafter, the ambulance arrived and transported Mr. Durco to the Westmoreland Hospital, Greensburg, Pennsylvania, where he was pronounced dead at approximately 3:30 a.m. At his death, Mr.

Durco was 56 years old and had a history of obesity, coronary artery disease, hypertension, and diabetes mellitus. The death certificate listed Mr. Durco's cause of death "as cardiac arrest due to atherosclerotic heart disease."

Mr. Durco's physician, Gopalan Vasudevan, M.D., who had treated Mr. Durco previously in connection with a heart attack, signed that death certificate. On October 23, 1985, Dr. Vasudevan executed an affidavit which stated, in part:

> Mr. Durco was a candidate for having a myocardial infarction, and the extremely adverse weather conditions that particular night was [sic] a significant factor in his demise. The extremely cold temperature on the night of his demise was a significant contributing factor which precipitated an acute myocardial infarction leading to Mr. Durco's death.

Dr. Vasudevan's affidavit, executed approximately seven weeks before the filing of Mrs. Durco's claim, materially contradicts his earlier assessment respecting the actual cause of Mr. Durco's death.

On December 16, 1985, Goldie Durco, decedent's widow, filed a PSOBA claim with the Claims Officer, BJA. On February 12, 1986, the BJA informed Mrs. Durco that her claim was denied because her husband's death was not the direct and proximate result of a personal injury as required by the PSOBA. The denial was based upon review of the claim documentation which indicated that Mr. Durco's death was caused by atherosclerotic cardiovascular disease. The denial stated that unless a traumatic injury was a substantial factor in causing death, the Act does not provide for benefit payments when a public officer's death results from a chronic congenital, or progressive disease.

On February 19, 1986, Mrs. Durco appealed the adverse determination of the PSOBA and requested a hearing before a Hearing Officer of the BJA. A hearing was held on April 30, 1986, at which Mrs. Durco and her son, John Durco, Jr., testified and presented further evidence regarding her claim. On June 9, 1986, Hearing Officer Neal H. Berg affirmed the adverse

determination, finding that decedent's death was caused by "chronic, progressive, atherosclerotic cardiovascular disease and not by exposure to 'severe climatic conditions'" as plaintiff contended.

On June 24, 1986, Mrs. Durco requested the Director, BJA, to review the decision of the Hearing Officer's adverse determination. The Director, BJA, affirmed on September 12, 1986, the Hearing Officer's determination of Mr. Durco's ineligibility for PSOBA benefits. On November 12, 1986, Mrs. Durco filed a petition for review in the United States Court of Appeals for the Third Circuit. Because that court lacks jurisdiction to review such claims, it transferred Mrs. Durco's case to this court pursuant to 28 U.S.C. § 1631 where her amended complaint was filed on February 2, 1987.

The applicable statues and regulations are not in dispute. The Public Safety Officers' Benefits Act, 42 U.S.C. § 3796, *et. seq.*, provides for the payment of a $50,000 death benefit to the survivors of any "public safety officer [who] has died as a direct and proximate result of a personal injury sustained in the line of duty ..." 42 U.S.C. § 3796. Under federal regulations, a "personal injury" is defined as "any traumatic injury, as well as diseases which are caused by or result from such an injury, but not occupational diseases." 28 C.F.R. § 32.2(e). A "traumatic injury" is defined as a "wound or other condition of the body caused by external forces including injuries inflicted by bullets, explosives, sharp instruments, blunt objects or other physical blows, chemicals, electricity, climatic conditions, infectious diseases, radiation, and bacteria, but excluding stress and strain." 28 C.F.R. § 32.3(f).

The PSOBA provides that a survivor benefit shall be paid when a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty. 42 U.S.C. § 3796. The regulations provide that an injury is a "direct and proximate" cause of death if it is a "substantial factor" leading to death. 28 C.F.R. § 32.3(d). A traumatic injury is considered a substantial factor leading to

death when "(1) the injury itself would be sufficient to bring about death, regardless of the officer's physical condition at the time of death; or (2) the injury contributes to the officer's death to as great a degree as any other contributing factor, such as preexisting chronic, congenital, or progressive disease." A claimant bears the burden of showing that an injury was a "substantial factor" in the officer's death irrespective of the length of time between death and the alleged personal injury. 42 Fed. Reg. 23260. The regulations provide that "any reasonable doubt arising from the circumstances of the officer's death" must be resolved in the claimant's favor. 28 C.F.R. § 32.4.

When a PSOBA claim is filed, Office of Justice Programs ("OJP") procedures require that the file be submitted to a forensic pathologist for review and that the opinion of other pathologists and cardiologists be solicited "if appropriate." 42 Fed.Reg. 23260. If the claim is denied, the claimant may request an oral hearing and may submit evidence relevant to eligibility. 28 C.F.R. § 32.24(a) and (c). The hearing officer is required to receive all relevant evidence proferred by the claimant, as well as "such other evidence as the hearing officer may determine to be necessary or useful in evaluating the claim." 28 C.F.R. § 32.24(c). The hearing officer is authorized to reopen the hearing at any time prior to decision for the receipt of additional relevant and material evidence. 28 C.F.R. § 32.24(e). If the hearing officer determines that a claimant is ineligible, the claimant may obtain review of that determination by the Director, Bureau of Justice Assistance.

### Discussion

■ This Court cannot conduct a *de novo* review of plaintiff's claim. Rather, this Court's review of a BJA decision denying payment of benefits under the PSOBA is limited to determining:

(1) whether there has been substantial compliance with statutory and implementing regulation;

(2) Whether there has been arbitrary and capricious action on the part of the government officials involved; and

(3) whether there was substantial evidence supporting the decision ...

*Tafoya v. United States,* 8 Cl. Ct. 256, 261 (1985); *Accord Morrow v. United States,* 227 Ct. Cl. 290, 292, 647 F.2d 1099, 1103, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981), *quoting Office of General Counsel, Office of Justice Programs, Legal Opinion No. 77–6* (Sept. 12, 1977). Where substantial evidence supports the administrative action, and where the administrative action was reasonable in light of all the evidence, this Court will not disturb the result. *Holman v. United States,* 181 Ct. Cl. 1, 8, 383 F.2d 411, 415 (1967). The Court simply is not a "superagency" and cannot make a redetermination of the merits based upon the administrative record. *Id.*

The plaintiff contends that the determination to deny benefits was not made in conformity with applicable statutes and regulations, and, in addition, the denial is not supported by substantial evidence and is arbitrary and capricious. The defendant contends to the contrary. There can be no doubt, however, that the BJA complied with procedures mandated by the statutory and implementing regulations. After the initial denial of PSOBA benefits, BJA notified Mrs. Durco of her right to request a hearing pursuant to 28 C.F.R. § 32.24. Mrs. Durco exercised her right and requested a hearing which was held on April 30, 1986. At the hearing, in accordance with applicable regulations, Mrs. Durco and her son, John Durco, Jr., testified and presented further evidence regarding the claim. After the hearing officer affirmed the adverse determination, Mrs. Durco requested the Director, BJA, to review that determination in accordance with 28 C.F.R. § 32.24(i). On September 12, 1986, the Director, BJA, affirmed the Hearing Officer's adverse determination. Since it is clear that procedures used in reaching the adverse determination in this case were in conformity with the statute and implementing regulations, the only questions presented are whether the record contains sub-

stantial evidence to support the denial of benefits by the PSOBA and whether there has been arbitrary and capricious action on the part of any government official involved.

As set forth above, the legislative background of the PSOBA clearly reflects an intent that entitlement to benefits under the act requires a traumatic injury to be the proximate cause of death. The adverse administrative action in this case was premised upon according great credibility to the opinion of Michael A. Clark, Ph.D., M.D., that Mr. Durco's death was caused by atherosclerotic cardiovascular disease, rather than as a direct and proximate result of a "traumatic injury." Dr. Clark, Chief, Division of Forensic Pathology of the Armed Forces Institute of Pathology, based his opinion upon a review of Mr. Durco's medical records, Dr. Vasudevan's statement on Mr. Durco's death certificate that the death was caused by cardiac arrest due to atherosclerotic heart disease and all claim documents relating to the circumstances and cause of Mr. Durco's death.

Plaintiff bases her case upon her disagreement with the weight accorded Dr. Vasudevan's affidavit which supports her position and the weight accorded Dr. Clark's opinion which supports the adverse determination. Plaintiff argues that defendant failed to resolve a reasonable doubt regarding Mr. Durco's death that was raised by Dr. Vasudevan's affidavit in favor of payment of benefits as required by 28 C.F.R. § 21.4.[1] While plaintiff is correct that 28 C.F.R. § 21.4 requires resolution of reasonable doubt in plaintiff's favor, the regulation does not require that any doubt be resolved in plaintiff's favor. *Tafoya v. United States*, 8 Cl. Ct. 256 (1985). In addition, the determination of the weight of evidence is within the province of the administrative official charged

with fact finding under the PSOBA. This Court, sitting in review of the administrative action, should not disturb the administrative officer's factual determinations as long as they are supported by substantial evidence.

■ Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison v. NLRB*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1935). Substantial evidence also "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. FMC*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). After a thorough review of the administrative record, including Dr. Vasudevan's affidavit, this Court can only conclude that Dr. Clark's opinion together with Mr. Durco's medical records and the death certificate signed by Dr. Vasudevan provide substantial evidence to support the determination that Mr. Durco's death was caused by atherosclerotic cardiovascular disease and that Mr. Durco's brief exposure to cold weather was not a traumatic injury which directly and proximately caused his death. It is clear on the face of the record that Mr. Durco had a history of coronary artery disease, hypertension, and diabetes mellitus. Mr. Durco's medical records, in conjunction with the death certificate which is consistent with Mr. Durco's medical history, provide an adequate and rational basis for the adverse determination.

The Court is of the opinion that Dr. Vasudevan's affidavit, executed nearly 10 months after Mr. Durco's death, stands more than anything else as a general, spec-

---

1. In addition, the plaintiff has speculated that perhaps Dr. Clark issuing his opinion letter dated January 24, 1986, did not know of or give consideration to Dr. Vasudevan's affidavit, executed in October 1985, as to the cause of Mr. Durco's death in January 1985. There is no hard or persuasive evidence to support this supposition. To the contrary, the record evidence discloses that Dr. Clark received for review all claim documents relating to Mr. Durco's death which would include Dr. Vasudevan's affidavit. *See* December 23, 1985 letter from Richard J. Condon, Program Planning Specialist, Public Safety Officers' Benefits Program to Dr. Michael A. Clark. Thus, the Court finds plaintiff's contention that Dr. Clark did not consider Dr. Vasudevan's affidavit is without merit.

ulative opinion with regard to the ultimate fact to be proven by the plaintiff, namely, that Mr. Durco's exposure to severe climatic condition was a significant contributing factor to his death. It is clear from the affidavit that Dr. Vasudevan believes it was medically possible that Mr. Durco's exposure to the cold weather and to a below-zero wind chill factor could have been a significant contributing factor in Mr. Durco's death. But Dr. Vasudevan's affidavit went beyond that. He concluded that the exposure in this case was a significant contributing factor. The affidavit may be viewed by a reasonable person as being unpersuasive and as falling far short of proving Mrs. Durco's case. The record evidence discloses that Mr. Durco's actual exposure to below-zero wind chill factored temperatures was only for the time he had to walk 182 feet to where he waited for his son to pick him up and during the 61–foot walk from the car to the station house. He was not exposed to extreme temperatures during the ride to the station house or while in the station house. In addition, the temperature of the air that Mr. Durco was breathing would not have been lower than 18 degrees fahrenheit, since the wind chill factor determines only the temperature of windless air that would have the same effect on exposed human skin as would a given combination of wind speed and air temperature. Thus, the total time of Mr. Durco's exposure to extreme conditions, even if the plaintiff's evidence is viewed in its most favorable light, could not have exceeded one or two minutes at best. During this time, Mr. Durco's body was protected by 28 pounds of clothing. Finally, it is highly significant to the Court that there is no evidence in the record that at any time during the trip to the station house or while in the station house did Mr. Durco complain of any discomfort due to the cold. To the contrary, he was talkative and jocular during the 20–minute period before his seizure, indicating that he was not experiencing any discomfort due to the cold.

Since the adverse administrative action is based on substantial evidence, even if plaintiff does draw a different conclusion from the evidence, the Court simply cannot find that the BJA's decision to deny payment of benefits did not comply with statutory and implementing regulations and constituted arbitrary and capricious action on the part of the government officials involved. In short, the Court finds that it was not error and it was not arbitrary or capricious for the BJA to deny payment because there is substantial evidence supporting that decision. Thus, on the basis of the entire record, the Court determines that plaintiff has failed to sustain her burden of proof.

### Conclusion

The plaintiff, Mrs. Durco [2], in support of her complaint to this Court has not shown that the adverse administrative determination was not supported by substantial evidence and was arbitrary or capricious. To the contrary, the facts contained in the record, including the death certificate signed by Dr. Vasudevan, the prior medical history of Mr. Durco showing, among other conditions, that he suffered from obesity and heart disease, the unequivocal findings as to the cause of death by Dr. Michael Clark, a trained and experienced forensic pathologist, the relative brevity of Mr. Durco's exposure to the severe weather conditions, the protective clothing that he wore during that brief exposure, and the absence of any complaint of discomfort due to the cold by Mr. Durco prior to his attack all reasonably support the prior adverse administrative determination in this case. This Court so finds on the basis of the entire record. Therefore, the plaintiff has failed to sustain her burden of proof. The Court thus denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment. The Clerk of Court shall enter judgment dismissing the complaint. No costs.

IT IS SO ORDERED.

---

**2.** While this Court is very sympathetic with the unfortunate situation in which Mrs. Durco finds herself, the Court must follow the dictates of the applicable statute and regulations as well as established legal precedents in reaching its decision in this case.